**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSSOCIATED WITH 917-963-3689 THAT IS STORED AT PREMISES CONTROLLED BY T-MOBILE | No. 1:24-mj- 00070-JCN <br><br> **FILED UNDER SEAL** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Nicholas Rich, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number 917-963-3689, with an unknown subscriber (hereinafter "the 3689 number"), which has service provided by T-Mobile US, Inc. ("T-Mobile"), which has offices at 4 Sylvan Way, Parsippany, NJ. The 3689 number is used by an individual known as "Leon." The 3689 number is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. I am a Special Agent with the U.S. Drug Enforcement Administration ("DEA") and have been since February of 2008. I am presently assigned to the Bangor, Maine, office and have received extensive training pertaining to narcotic investigations and the investigation of various crimes which arise from drug trafficking activities. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(c). As a federal agent, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States. During my employment with DEA, I have participated in numerous

investigations relating to the distribution of controlled substances, including cocaine, heroin, fentanyl, methamphetamine, diverted pharmaceuticals, and other substances in violation of the federal anti-drug laws, including Title 21, United States Code, Sections 841 and 846. I have conducted or participated in, among other things, surveillance, the execution of search and arrest warrants, debriefings of informants and confidential sources, and reviews of recorded conversations relating to narcotics trafficking. I have authored drug-related search warrant requests and successfully executed such warrants resulting in the seizure of drugs and other contraband, including firearms. I have also assisted in the execution of numerous drug-related search and arrest warrants. I have received extensive training in the field of narcotics enforcement and investigations. I am very familiar with the habits, methods, routines, practices, and procedures commonly employed by persons engaged in the trafficking of illegal drugs, including the use of the internet, internet platforms, applications, and cellular telephones to facilitate those activities.

3.  The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to provide the facts necessary for a determination of probable cause for the requested warrant.

4.  Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of federal law, to include 21 U.S.C. § 841(a)(1), 21 U.S.C. § 846, and 21 U.S.C. § 843(b) (hereinafter "Target Crimes") have been committed by one or more persons. There is also probable cause to believe

that the location information described in Attachment B will constitute evidence of these criminal violations.

5. The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. *See* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

6. The DEA, together with partner agencies, has been investigating a subject know as "Leon Leon" and "Leon" for utilizing a particular Facebook Account (described for purposes of this affidavit as the "Leon Leon Account") and also a T-Mobile cellular telephone assigned the 3689 number, in the distribution of illegal controlled substances in the Bangor region.

*First Location Warrant for the 3689 Number*

7. As part of this investigation, on February 7, 2024, the DEA applied for and obtained a search warrant authorizing the collection of prospective cellular location information from T-Mobile as to the 3689 number, in Docket Number 1:24-mj-JCN. That application and warrant are attached hereto as Exhibit 1. The affidavit submitted in support of that application—which provides a factual background as to the investigation and the identification of the 3689 number and summarizes my relevant training and experience—are expressly incorporated herein by reference.

*Location Information as to the 3689 Number*

8. The DEA did not begin receiving location information from T-Mobile pursuant to the prior warrant until February 15, 2024. For several days, the location

3

information indicated the 3689 number was generally staying in areas near Boston, Massachusetts. Due to the imprecision of the data provided by T-Mobile, a specific address where the 3689 number was most often located could not be identified. However, it appeared that the phone generally was in the area of an address on Hamilton Street, in the Dorchester neighborhood of Boston.

9. On February 27, 2024, the location data showed the 3689 number traveled north from Massachusetts and into Maine. Based on the facts developed in this investigation—as summarized in Exhibit 1—and based on my training and experience, I believed that the subject known locally as Leon was therefore traveling into Maine and likely the Bangor area for purposes of transporting controlled substances to Maine customers and/or collecting proceeds from Maine distributors. Surveillance teams were dispatched to attempt to locate a vehicle associated with the incoming location data as the phone approached the Bangor area. Due to the imprecision of the information provided by T-Mobile, agents were initially not able to definitively locate any specific vehicle that correlated with the "ping" data from T-Mobile. However, based on a combination of surveillance and the location data, I came to believe that a particular vehicle—a red Toyota Highlander bearing Massachusetts plate 2AYE65 —was traveling with the 3689 number. Specifically, after several hours of surveillance as the phone pings were in the Bangor area, that vehicle was identified. As that vehicle appeared to head south and depart the Bangor area in the direction of Massachusetts, the phone pings likewise moved south.

10. I contacted Maine State Police Trooper Thomas Pappas and provided him with information about the vehicle and its suspected location from the T-Mobile data.

Trooper Pappas located the vehicle in a posted construction zone and clocked the vehicle as traveling over the posted speed limit for that construction zone. He initiated a traffic stop and issued a warning to the driver. In doing so, he photographed the following identification cards for the female driver and her two male passengers: (1) Driver: Massachusetts Limited Term Driver's License for Dianet Soto Sanz of Dorchester, Massachusetts; (2) Passenger 1: Expired United States Visa for Ramon Antonio De Leon; (3) Passenger 2: Dominican Republic identification card for Alexis Mariano De Leon. Trooper Pappas did not detect or observe any obvious contraband inside the vehicle but did observe the two male passengers had between them a very large plastic container purporting to be a container for protein powder. He did not otherwise conduct a drug-related investigation and allowed the vehicle to depart a short time after stopping it.

11. Based upon my review of the photographs from Trooper Pappas, I confirmed that Alexis Mariano De Leon appeared to be the same individual who appeared in photographs on the Leon Leon Facebook Account and was identified as Alexis De Leon by the Boston Police Department, all as explained in Exhibit 1. Additionally, it appeared to be the same individual identified via photograph as Leon by multiple cooperators in this investigation, including CHS1. Additionally, based on the general pattern reflected in the location data from T-Mobile, the pattern of travel for the 3689 number was consistent with what has been reported by multiple individuals during this investigation, i.e. that "Leon" travels to the Bangor area to distribute drugs and/or collect proceeds from sub-distributors.

12. On March 2, 2024, I observed the location data showed the 3689 number was again traveling from Massachusetts to Maine. Again, the data showed the number made a same-day round trip to the Bangor area, although the data was not precise enough to determine exact stops of the vehicle.

13. On March 5, 2024, I interviewed Jane Doe 4[1] at the Penobscot County Jail in Bangor, Maine. On that date, Doe admitted to purchasing bulk quantities of fentanyl from Massachusetts-based drug traffickers who utilize the "Leon Leon" Facebook account. Specifically, Doe stated she had purchased fentanyl on approximately five to six separate occasions from the Leon Leon Facebook account over the past three to four months. Doe stated on March 2, 2024, she coordinated the purchase of 300 grams of fentanyl from the Leon Leon Facebook account. Doe stated she met with one Hispanic female and two Hispanic males at a specific restaurant in Bangor, Maine on that date, and purchased approximately 300 grams of fentanyl for $3,000. Doe positively identified Ramon DE LEON as one of the two males whom she purchased the 300 grams of fentanyl from on March 2, 2024, in Bangor, ME.

## ADDITIONAL INFORMATION ABOUT WIRELESS CARRIERS

14. In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they

---

[1] Jane DOE 4 is currently incarcerated at the Penobscot County Jail on a State of Maine arrest warrant for Failure to Appear. She has prior a criminal history that includes convictions for Assault and Domestic Violence. She is purportedly providing information to law enforcement in exchange for consideration towards a pending Maine State charge of Violation of Conditions of Release.

provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise than E-911 Phase II data.

15. Based on my training and experience, I know that T-Mobile can collect E-911 Phase II data about the location of the 3689 number, including by initiating a signal to determine the location of that phone on the T-Mobile network or with such other reference points as may be reasonably available.

16. Based on my training and experience, I know that T-Mobile can collect cell-site data about the 3689 number. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know

7

that wireless providers such as T-Mobile typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## AUTHORIZATION REQUEST

17. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

18. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the 3689 number would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

19. I further request that the Court direct T-Mobile to disclose to the government any information described in Attachment B that is within the possession,

custody, or control of T-Mobile. I also request that the Court direct T-Mobile to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with T-Mobile services, including by initiating a signal to determine the location of 3689 number on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

20. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the 3689 number outside of daytime hours.

Respectfully submitted,

Nicholas Rich
Special Agent
U.S. Drug Enforcement Administration

Sworn to telephonically and signed electronically in accordance with the requirements of Rule 4.1 of the Federal Rules of Criminal Procedure

Date: Mar 07 2024

City and state: Bangor, ME

Judge's signature

John C Nivison U.S. Magistrate Judge
Printed name and title